UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————x

AGI WEISS, Individually and as Executrix
of the Estate of PAL WEISS, and as Assignee,
Representative and/or Nominee of Certain
LA SUISSE Policyholders,

      Plaintiff,   Index. No. 01 Civ. 1006
  (CM)(MDF)

  -against-

LA SUISSE, SOCIETE D'ASSURANCES SUR
LA VIE,

      Defendant.

————————————————————————x

ISAC HIRSCH, CHANA DEUTSCH, CHUME
FULOP, FAIGY BRACH, ISAC ROSENBERG,
as Assignee, ARON DEUTSCH, as Assignee,
and SOLOMON KAHAN, as Assignee, and
All others similarly situated,

      Plaintiffs,

  -against-

LA SUISSE, SOCIETE D'ASSURANCES SUR
LA VIE,

      Defendants.

————————————————————————x

DECISION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT DISMISSING
CLAIMS BROUGHT PURSUANT TO
42 U.S.C. § 1981 AS TIME BARRED

McMahon, J.:

At the direction of the Court, the defendant in this consolidated action – in which a class has been certified only on the claim brought pursuant to 42 U.S.C. § 1981 – has moved for summary judgment dismissing the class claim on the ground that it is time barred. This motion is granted as to all parties plaintiff except Agi Weiss and the 54 policies she represents in the action she commenced over two years prior to the filing of the class complaint. As to Mrs. Weiss, the motion is denied without prejudice.

According to the Hirsch Complaint,[1] the facts are as follows:

La Suisse is a life insurance company, organized and doing business in Switzerland, authorized to issue individual life insurance policies that are valid worldwide. Complaint ("Cplt.") ¶¶ 11, 13, 14. Plaintiffs are members of New York Orthodox and Hassidic Jewish communities. Cplt. ¶ 15. From 1989 to 1994, defendant marketed and sold insurance policies in New York through its authorized representative in Monroe, NY. Cplt. ¶ 16. Plaintiffs bought certain insurance policies from Defendant's representative described as "mixed life" insurance policies which contained marriage event clauses. Cplt. ¶¶ 19, 20. These clauses provided for advance payment of benefits or "insured capital" in the event of marriage prior to the insurance termination dates stated in each policy. Cplt. ¶ 20. Approximately 7,000 of these "mixed life" policies were sold in the United States – mainly in the Hassidic communities of Kiryas Joel,

---

[1] All citations in this decision to the Complaint are references to the March 7, 2003 Complaint filed in Isac Hisrch, et al., on behalf of himself and all others similarly situated v. La Suisse, 03 Civ. 1143. Because this case was transferred and consolidated with Agi Weiss, Individually and as Executrix of the Estate of Pal Weiss v. La Suisse Societe d' Assurance sur la Vie, 01 Civ. 1006 (CM), there are two complaints on the record that contain allegations under 42 U.S.C. § 1981. However, all of the parties' memoranda on the certification issue refer to the Hirsch complaint, so this decision cites to that complaint as well.

Monsey, and Brooklyn, New York. Cplt. ¶ 21.

Each of the "mixed insurance" policies were issued on the life of a child and contained a marriage event clause that triggered full acceleration of the face amount of the policy prior to the maturity date. Cplt. ¶ 24. Most of these policies contained Final Maturity Dates of 15 or 16 years after the stated Beginning of Contract Date. Cplt. ¶ 23.

Under these "mixed life policies" benefits were payable in one of three ways: (1) in the event the insured survived to the "End of Contract" date, the face amount was due; (2) in the event the insured died before the "End of Contract" date, the face amount of the policy was due; and (3) in the event the insured married before the "End of Contract" date, the face amount of the policy was due. Cplt. ¶ 25. The face amount of each policy is 50,000 Swiss Franks or 100,000 Swiss Franks. Cplt. ¶ 29.

Plaintiffs allege that defendant failed and refused to pay marriage-event benefits due under the policies; failed to confirm coverage under the policies; failed to acknowledge correspondence from policyholders, beneficiaries or assignees of interests under the policies; failed to reinstate policies in accordance with policy terms; wrongly and intentionally allowed policies to lapse without acceptance of duly-tendered premiums under the policy terms; failed and refused to honor loan requests in accordance with the terms and conditions of the policies; and failed to acknowledge proof of marriage supplied by policyholders, beneficiaries and/or assignees of interests under the policies. Cplt. ¶ 28. As to these breach of contract claims, I have denied a motion for class certification. See Hirsch v. La Suisse, 226 F.R.D. 446 (S.D.N.Y. 2005).

Plaintiffs further allege that defendant violated 42 U.S.C. § 1981 by intentionally discriminating against plaintiffs and the class based upon their ethnic and racial identity. Cplt. ¶

3

64. As to this federal claim, I certified a class consisting of all persons (other than the persons who were parties to an earlier action involving the same allegations, see *infra*) who purchased marriage policies between January 1, 1989 and June 30, 1995.  See Hirsch v. La Suisse, *supra*.

Prior History

This is not the first action in which these allegations of racial discrimination have been asserted – and that fact is highly relevant for statute of limitations purposes.

In Kalman Weiss v. La Suisse, 97 Civ. 1352 (CM)(MDF), (hereinafter "La Suisse I"), thirty similarly situated plaintiffs sued La Suisse, asserting claims identical to those made by Weiss and the Hirsch named plaintiffs.  This fiercely litigated case went to trial in early 2004.  Some of the individual plaintiffs prevailed on their contract claims, but defendants prevailed on all other claims, including the claim of racial/ethnic discrimination. The verdict, as well as this court's rulings on choice of law and its decision to dismiss La Suisse's fraud counterclaim, was recently affirmed on appeal by a panel of the United States Court of Appeals for the Second Circuit. See Weiss v. La Suisse, No. 04-2589-cv, – F.3d –, 2005 WL 171912  (2d Cir. July 22, 2005). In the summary order affirming the judgment dismissing the plaintiffs' civil rights claim, the Second Circuit flatly stated, "Plaintiffs failed to adduce *any evidence* to suggest that these reasons were pretexts masking an intent to discriminate on the basis of race in violation of § 1981." Id. at *1 (emphasis added).

La Suisse I was not originally filed as a class action. However, on June 7, 2001 – well over four years after the suit was originally brought (on February 27, 1997) –  plaintiffs in La Suisse I moved, pursuant to Fed R. Civ. P. 15(a), for leave to file a Second Amended Class Action Complaint, in which for the first time they purported to assert their claims on behalf of a

class. The class they sought to represent is virtually identical to the class I have certified in this action – the only difference being that our class includes purchasers of marriage policies through June 30, 1995, whereas the purported class in La Suisse I included only purchasers of marriage policies through June 30, 1994). The motion for leave to file a second amended complaint and for class certification was denied as untimely on September 14, 2001. Weiss v. La Suisse, 161 F. Supp. 2d 305, 319 (S.D.N.Y. 2001).

In March 2003, the same lawyers who represented plaintiffs in La Suisse I filed a purported class action in the United States District Court for the Eastern District of New York. That action (Isac Hirsch v. La Suisse) was transferred to this court in later 2004, where I consolidated it with a similar case that had been brought on February 8, 2001 by plaintiff Agi Weiss (not purporting to represent a class, but representing a number of policies purchased by herself and her husband).[2]

Now La Suisse seeks dismissal of both the § 1981 class claim (first asserted on March 3, 2003) and Agi Weiss's identical § 1981 claims (first asserted on February 8, 2001) on statute of limitations grounds.[3]

---

[2] Agi Weiss's case had never been consolidated with La Suisse I. As far as this Court can recall, no one ever sought to have it consolidated with La Suisse I.

[3] Pursuant to an order entered by this Court on March 3, 2005, La Suisse was to make a motion on statute of limitations grounds first, and then a second motion on the merits if anything were left of the federal civil rights claim.

# DISCUSSION

**The Class Plaintiffs' Claims are Barred By the
Four Year Statute of Limitations (28 U.S.C. § 1658)**

Plaintiffs bring their federal claims under 42 U.S.C. § 1981(b), which prohibits discrimination in the performance, modification, and termination of all benefits, privileges, and conditions of the contractual relationship. Because subsection (b) of § 1983 was enacted after December 1, 1990, it is subject to the four year statute of limitations found in 28 U.S.C. § 1658. See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004).

A claim accrues, and the limitations period begins to run, when the plaintiff knows, or should know, of the decision or act that gave rise to the injury. Singleton v. City of New York, 632 F. 2d 185, 191 (2d Cir. 1980). The limitations period begins at the time of the discriminatory act or decision, not necessarily when the effects of the discrimination are experienced by the plaintiff. "The proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful." Chardon v. Fernandez, 454 U.S. 6, 8, 102 S. Ct. 28, 70 L. Ed. 2d 6 (1981).

The corporate decisions challenged by plaintiffs as discriminatory are certain policy decisions taken at the highest levels of La Suisse in 1994, 1995 and 1996. That is when the allegedly discriminatory acts occurred. As I held in the order granting class certification on the federal civil rights claim, "The corporate decisions were made when they were made, and the discrimination claim arose at that moment." Hirsch v. La Suisse, *supra*, 226 F.R.D. at 450.

Looking to the allegations of the Hirsch complaint and to the Joint Pre-Trial Order that

has already been filed in this case (on March 11, 2005), the last alleged act of discrimination occurred in November 1996, when La Suisse suspended the payment of benefits to all holders of marriage policies for about three months. And plaintiffs' own descriptions of the allegedly discriminatory acts confirms that the majority of the alleged discrimination took place in 1995, with the last act occurring in November 1996:

> The board of directors [of La Suisse] adopted at its June 1995 meeting certain measures . . . .
>
> In a board meeting of July 7, 1995, the board determined that the interest rate of the marriage-policy loans would be 8%. This was confirmed in a board meeting of July 19, 1995, when the board also determined to limit loans to 65% of the mathematical reserve . . . .
>
> By September 1995, La Suisse's new measures regarding its marriage policies had taken effect . . . .
>
> Before July 1996, La Suisse had [made the decision to take other allegedly discriminatory acts] . . . .
>
> In July 1996, la Suisse instituted new "administrative rules" concerning the marriage policies . . . .
>
> La Suisse stopped on November 20, 1996, paying beneficiaries who married and made claims under their policies . . . .

(Joint Pre-Trial Order, ¶¶ 11, 12, 15, 18, 19, 20). All of these dates are confirmed by La Suisse corporate minutes (introduced at the trial in La Suisse I) and were testified to by Elias A. Horowitz, plaintiffs' agent and principal witness at the trial. There is, in fact, no dispute whatever that the last allegedly discriminatory corporate act took place in the last quarter of 1996.

    Moreover, the undisputed evidence in the record (see Declaration of Kevin G. W. Olson, attached to the instant motion and particularly Exhibits K, M, N, O, P, Q, R) demonstrates that

Elias Horowitz and the other agents who were formally appointed by plaintiffs to receive all communications from La Suisse concerning the policies were notified of each of these corporate decisions as they were made. These agents were already threatening La Suisse with litigation – and were trying to effect some sort of global settlement on behalf of all the policy holders – as early as January 20, 1997, when a global settlement meeting was held. Significantly, one of the agents who attended that meeting described the corporate decisions affecting the terms of the policies as "discriminatory for Jews." (Olson Dec. Ex. S; see also Ex. T). A further meeting attempting to forge a settlement on behalf of all the policy holders was held on February 3, 1997. Settlement discussions continued even after the filing of La Suisse I. (Olson Dec. Ex. V, W, X).

Knowledge by an agent is sufficient to start the limitations period running on a claim held by the agent's principal. Veal v. Geraci, 23 F. 3d 722 (2d Cir. 1994). It is obvious that the agents appointed by the policy holders knew the facts that underlay the § 1981 claim, and knew enough to cast them in civil rights terms, prior to January 20, 1997. By March 2003, when Hirsch was filed, it was far too late for the policy holders to assert those claims in court.

Finally, La Suisse I – in which the allegations of discrimination were made in formal court documents (albeit on behalf of only thirty individuals, in what is described as a "test case") – was filed on February 27, 1997. Early in that action, Elias Horowitz advised this court that "this litigation will affect thousands of New York residents and not simply the thirty plaintiffs in the caption. For that reason, many are waiting and watching." (Olson Dec. Ex. DD). The filing of the lawsuit was a public event in Kiryas Joel, where many members of the class live, and the action was supported – financially and otherwise – by the leaders and members of that community. (Olson Dec. Ex. Z, AA, BB, CC).

It is well settled that the filing of a lawsuit by private parties puts plaintiffs with identical claims on notice of their potential claims. Korwek v. Hunt, 646 F. Supp., 953, 958 (S.D.N.Y. 1986), *aff'd,* 827 F.2d 874 (2d Cir. 1987).  Thus, at the very latest, every class member's § 1981 claim had accrued by February 27, 1997. Were the plaintiffs to deny having actual notice of the filing of the La Suisse I action, the claims could still have accrued no later than that date, because the filing of that lawsuit is sufficient evidence that the alleged bad acts were discoverable by the date of the filing of the first lawsuit. Berry Petroleum Co. v. Adams & Peck, 518 F.2d 402, 410 (2d Cir. 1975). This court so held in La Suisse I. See Weiss v. La Suisse, *supra*, 161 F. Supp. 2d at 320.

In September 2001, when I denied the belated class certification motion in La Suisse I, I noted that the statute of limitations had probably run on "many, if not most" of the claims the plaintiffs in that action were belatedly seeking to assert on behalf of a class. Id. at 320.  I also said that policyholders "had no business 'watching and waiting'" if they believed they might have claims. Id. at 320 n.12.  The statute of limitations does not toll while "test cases" are litigated.

Statutes of limitations do toll individual claims that are the subject of a class action, until such time as a court determines the class certification motion. American Pipe & Construction Co. v. Utah, 414 U.S. 538, 561, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974).  Thus, the statute of limitations ceased to run on any live § 1981 claims that were not otherwise the subject of litigation (see the discussion of the Agi Weiss claims, *infra*) when the La Suisse I plaintiffs moved for permission to transform their case into a class action, and began to run again when I denied that motion. However, the class claims were first asserted on June 7, 2001.  For the

9

reasons stated above, there were no live class claims after February 27, 2001 (except possibly the Agi Weiss claims, see *infra*). So when the motion for leave to amend the complaint and the class certification motion were filed, therefore, there was nothing left to toll.

For any and all of the above reasons, the claims asserted by the Hirsch plaintiffs and the members of the class they represent – first filed in March 2003 – are clearly and unequivocally time-barred.

Plaintiffs' argument that the limitations period did not start until December 2000 (see Pl. Mem. of Law at 14-19) is not just unsupported by any evidence in the record; it is undercut by all the evidence in the record. In La Suisse I, I condemned this same argument as "specious." Weiss v. La Suisse, *supra*, 161 F. Supp. 2d at 320. The argument has grown less compelling, not more, with the passage of time.

The only other answer the Hirsch plaintiffs offer to the overwhelming evidence demonstrating that they knew or had reason to know of their claims anywhere from six to eight years earlier than the time they filed their lawsuit is that the allegedly discriminatory acts constitute a "continuing violation." But any chance they might have had to invoke the continuing violation doctrine – already largely discredited in the Second Circuit, see DeLa Fuente v. DCI Telecommunications, Inc., 259 F. Supp. 2d 250, 267 n.12 (S.D.N.Y. 2003) – effectively ended when the United States Supreme Court decided National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). In that case, the Supreme Court ruled that the continuing violation doctrine is applicable only where discrimination arises from the "cumulative effect" of multiple acts (for example, in a hostile work environment case). See Morgan, 536 U.S. at 115. It does not apply where the plaintiff

alleges discrete acts that individually give rise to a discrimination claim. Id. at 112.

To the extent plaintiffs here claim that discrete incidents of discrimination (the changes in loan interest rates, fees on loans, payment of dividends, surrender value, administrative rules, and cancellation of policies), taken together, can be considered a continuing violation, Morgan forecloses the argument. Plaintiffs allege that each of these decisions interfered with rights that the plaintiffs had under their insurance contracts. Therefore, they do not make out a continuing violation. See Washington v. County of Rockland, 373 F.3d 310 (2d Cir. 2004).

To the extent that plaintiffs are arguing that the continuing violations doctrine applies because various purchasers of the policies continued to feel the effects of the allegedly discriminatory actions for many years after La Suisse made its various corporate decisions – because, for example, the insureds under certain policies got married in 2000, or 2001, or 2002 – plaintiffs are completely off base. In making this argument, plaintiffs conflate (and confuse) "pattern and practice" analysis (which may or may not have survived Morgan) with "time of the act, not when its consequences are felt" analysis.  La Suisse made no allegedly discriminatory decisions after November 1996, and the class members clearly had reason to know of these decisions at or about the time they were made (which was, for the most part, well before November 1996). The fact that some of the plaintiffs continued to feel the consequences of, say, policy cancellation – because, for example, their children did not marry until 2002 or 2003 – does not alter the date on which the claim accrued, which is the date plaintiffs' agent was notified of that act (i.e., that the policies had been cancelled and would not be paid out).

So the federal civil rights claim that was asserted in the class action filed in the Eastern District of New York in March 2003 is absolutely and unmistakably time-barred and must be

dismissed with prejudice.

**Agi Weiss' § 1981 Claims Cannot
Be Dismissed as Time Barred – Yet**

That takes care of all the policy holders who were not plaintiffs in La Suisse I except Agi Weiss. But what of the federal civil rights claim filed by Agi Weiss on her own behalf and on behalf of her 54 grandchildren, one of whom is deceased, each of whom was to be the beneficiary of a marriage policy? Are her claims also time barred? I think so, but I cannot definitively answer that question on the record before me.

Agi Weiss's case differs somewhat from the rest (which is no doubt why the parties did not press to fold it into La Suisse I). Mrs. Weiss commenced her own separate action against La Suisse on behalf of herself and her 54 grandchildren. She and her late husband bought (or tried to buy) policies for each of the grandchildren through an agent named Josef Rand, whom the complaint identified as a "direct Agent of La Suisse or under the La Suisse General Agency (Generalagentur) of Rene Oberholzer . . . ." (Id. ¶ 39.) It is not clear from the complaint (which is internally contradictory) whether the Weiss's attempted to purchase their policies in 1991 (id. ¶ 38) or in 1994 (id. ¶ 40).[4] In either event, her principal allegation is that Rand stole their money and either never procured the policies she authorized him to purchase on behalf of the 54 grandchildren or failed to pay the premiums on those policies. (Id. ¶ 44.) By alleging that Rand was a direct agent of La Suisse, Agi Weiss obviously claims that the policies should have been issued by La Suisse, and that she is entitled to the same rights and benefits as the holder of any

---

[4] I am guessing that the reference to 1991 is a typographical error, given the explicit allegation that the Weiss family dealt exclusively through Rand and that they met Rand on a number of occasions starting in May 1994.

full paid-up marriage policy.[5]

In addition to her "faithless agent" claim and various other breach of contract claims, Agi Weiss asserted a claim pursuant to § 1981 against La Suisse. She brought that claim on February 8, 2001. The question that arises is whether her claim is time-barred.

Unfortunately, the easy answer will not work. If this claim had been asserted more than four years after the filing of La Suisse I, I could dismiss it out of hand. But it was not. Agi Weiss's civil rights claim was filed two weeks *before* the end of the four year period that began with the filing of La Suisse I, on February 27, 1997. Thus, I cannot rely on the filing of La Suisse I to dismiss Agi Weiss's civil rights claim as time barred, as I could for members of the Hirsch class.

The question, then, is whether the record assembled for me contains any evidence tending to show that Agi Weiss (as opposed to policy holders generally) should have been on notice prior to February 8, 1997, of the various allegedly discriminatory acts that form the basis of her § 1981 claims. Given her "faithless agent" claim, I was careful not to consider Agi Weiss and her grandchildren as part of the class for statute of limitations purposes, because notice to an agent may not mean the same thing for Agi Weiss's family as it does for the other policy holders.

The short answer is that there is nothing in the record before me that allows me to answer that question. I have confirmed this with counsel.

Of course, even if the Agi Weiss § 1981 claims are not time-barred, they appear to be doomed. The Second Circuit flatly declared, after reviewing the massive trial record in La

---

[5] And in a telephone conference with counsel, I was advised that the policies did in fact issue.

Suisse I – a record assembled over years of fulsome discovery – that the plaintiffs in La Suisse I "failed to adduce *any* evidence" that La Suisse was motivated by anything other than pending economic disaster when it made the allegedly discriminatory decisions that form the basis of this lawsuit. See Weiss v. La Suisse, *supra*, 2005 WL 171912, at *1 (emphasis added). The claims in Agi Weiss's action are no different than the claims in La Suisse I . They rely on the same discrete acts of alleged discrimination. I cannot imagine what evidence Agi Weiss could place before me that the plaintiffs in Weiss v. La Suisse did not put into their trial record.[6] Thus, the Second Circuit's statement appears to drive the last nail in the coffin of *anyone's* § 1981 claim – including Agi Weiss's.

However, since the record on this motion does not contain any evidence that specifically pertains to notice to Agi Weiss prior to February 8, 1997, all I can do is deny the motion for summary dismissal on limitations grounds as to Agi Weiss, without prejudice. When defendant complies with this Court's March 2005 scheduling order and moves for summary judgment on the merits of Agi Weiss's § 1981 claim (which will have to happen, because of the limits of collateral estoppel), I will deal with any evidence that can be mustered relating to the statute of limitations and this particular plaintiff.

---

[6] Indeed, discovery in La Suisse I was so protracted and so comprehensive that I simply deemed all La Suisse I discovery to be discovery in this consolidated action and refused to permit any additional discovery. The fact that the same lawyers represented plaintiffs and defendant in all three La Suisse cases from Day One made this an easy order to enter. If Mrs. Weiss can find something in the vast record assembled over many years in La Suisse I that has not already been brought to the court's attention, she is, of course, welcome to rely on it. If she cannot, then her § 1981 claim will be summarily dismissed.

**NEXT STEPS**

Per the Court's order of March 3, 2005, defendant has 30 days from today's date to move for summary judgment on the merits of the Agi Weiss § 1981 claims. I will dispose of that motion as soon as it is fully briefed.

What will be left at that point are the unique breach of contract claims asserted by Agi Weiss in her various capacities; the individual claims of Isac Hirsch, Chana Deutsch, Chume Fulop, Faigy Brach; and the claims of Isac Rosenberg, Aron Deutsch and Solomon Kahan as Assignees. All of these claims have been severed from the federal civil rights claim and are proceeding under a separate docket number (01 Civ. 1006-A). Discovery on these claims is currently proceeding before Magistrate Judge Fox. I assume that this court has diversity jurisdiction over those claims. (If this is not true, I should be advised immediately, because I will not exercise supplemental jurisdiction to entertain those claims). If these claims cannot be compromised, they will be set for trial as soon as Judge Fox tells me discovery is over. Given the state of the court's civil docket (which is continually being adjourned due to the need to try criminal cases), and the fact that I will call the claims for trial on 72 hours notice and will not permit any adjournment for any reason whatever, the parties would be well advised to stipulate to have Magistrate Judge Fox try whatever contract claims are left.

Notice of the class claims has gone out to the class. Therefore, notice that the class claims have been dismissed as time barred will also have to go out to the class. Notice will be sent at plaintiffs' expense. I will also entertain a motion from La Suisse for reimbursement of any expenses it incurred in sending notice of the time-barred class claim to the putative class members.

This constitutes the decision and order of the Court.

Dated: August 10, 2005

_____
U.S.D.J.

BY FAX TO:

    Richard Mahon, Esq.
    Rachel Sirota, Esq.
    Zeb Landsman, Esq.